## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## FLORENCE DIVISION

| | | |
|---|---|---|
| Kendra Haley, | ) | Civil Action No.:_____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| Social Finance, Inc., a corporation, | ) | **JURY TRIAL DEMANDED** |
| also d/b/a SoFi, SoFi Lending | ) | |
| Corp., a corporation, also d/b/a SOFI, | ) | |
| and SoFi Bank, N.A., Corp, | ) | |
| | ) | |
| _____ ___Defendants._____ | ) | |

## <u>COMPLAINT</u>

1.      This is an action brought by Plaintiff, Kendra Haley, for actual, statutory, and punitive damages, attorneys' fees, and costs for Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (hereinafter "FCRA").  Plaintiff also seeks compensatory and punitive damages for the Defendants' violations of South Carolina common law set forth herein.

2.      The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3.      Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in

a credit report." S. Rep. No. 91-517 (1969).

4.    To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681c and 1681e, which are two of the cornerstone provisions of the FCRA.

5.    One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

6.    The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

## **JURISDICTION AND VENUE**

7.    This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.

2

§1681p, and 28 U.S.C. §1331, §1332, and §1367.

8.      Venue is proper in the Florence Division because the Plaintiff resides in Florence County and the Defendants transacted business in this division.

## **PARTIES**

9.      Plaintiff, Kendra Haley, is a resident and citizen of the State of South Carolina, Florence County, and is over the age of twenty-one (21) years.  Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10.      Defendant Social Finance, Inc., also doing business as SoFi (hereinafter SoFi) is a Delaware corporation with its principal office or place of business at One Letterman Drive, Building A, San Francisco, California 94129. SoFi may be served with process through its registered agent for service of process, CSC – Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833-3505.  At all times and in all respects relevant herein, Defendant SoFi was doing business in the state of South Carolina and in this division.

11.      Defendant SoFi Lending Corp., also doing business as SoFi (hereinafter "SoFi Lending") is a California corporation with its principal office or place of business at 375 Healdsburg Avenue, Suite 280, Healdsburg, California 95448.  SoFi Lending is a wholly owned subsidiary of Defendant SoFi. Defendant SoFi Lending may be served with process through its registered agent for service of process, Corporation Service Company, 508 Meeting Street, West Columbia, South Carolina 29169.  At all times and in all respects relevant herein, Defendant SoFi Lending was doing business in the state of South Carolina and in this division.

12.     Defendant SoFi Bank, N.A., Corp., (hereinafter "SoFi Bank") is a Utah corporation with its principal office or place of business at 2750 E. Cottonwood Pkwy, Suite 300, Cottonwood Heights, Utah 84121.  Defendant SoFi Bank may be served with process through its registered agent for service of process, Anthony Gallo, 2750 E Cottonwood Pkwy, Suite 3009, Salt Lake City, Utah 84121. At all times and in all respects relevant herein, Defendant SoFi Bank was doing business in the state of South Carolina and in this division.

13.     Defendants SoFi, SoFi Lending, and SoFi Bank, each participated in and contributed to the damages caused to the Plaintiff.  The Defendants all acted in concert with the others in the actions described below.

14.     All acts done by Defendants were done on their own behalf, and on behalf of each other.  Each Defendant acted as principal/agent, each for the others.

## FACTUAL ALLEGATIONS

15.     On or about October 14, 2022, Plaintiff's secure and stable life as she knew it was stolen from her when she learned that, since the death of one of her infant twins, her husband had developed a gambling addiction and had been opening lines of credit and/or credit card accounts in Plaintiff's name without her knowledge or consent.

16.     On June 30, 2022, SoFi Lending wrongfully accessed and did a hard inquiry of Plaintiff's Experian credit report without Plaintiff's authorization or consent.  Plaintiff did not apply for or request credit from Defendant SoFi Lending.

17.     On June 30, 2022, SoFi Bank wrongfully accessed and did a hard inquiry of Plaintiff's TransUnion credit report without Plaintiff's authorization or consent.  Plaintiff

did not apply for or request credit from Defendant SoFi Bank.

18.     Thereafter, on July 6, 2022, Defendants allowed Plaintiff's husband to open a fraudulent Loan in Plaintiff's name, Loan number PL9575XX, (hereinafter referred to as the "Loan"), in the amount of $20,000. Said Loan began reporting on Plaintiff's credit reports as past due as of September 2022.

19.     Plaintiff did not authorize or in any way allow this Loan to be opened in her name and same was done without her knowledge or permission.

20.     On October 6, 2022, SoFi Lending did an account review of Plaintiff's Experian credit report. At the time of this account review, Plaintiff did not have an account with SoFi Lending.

21.     On October 15, 2022, Plaintiff filed a police report with the Florence County Sheriff's Office regarding this Loan being fraudulently opened in her name, as well as several other accounts.

22.     On or about October 21, 2022, Plaintiff filed a fraud claim via phone with Defendants.

23.     On or about November 2, 2022, Plaintiff received a fraud packet from Defendants via mail. Plaintiff completed the fraud packet and mailed it back to Defendants on the same day.

24.     On November 21, 2022, Plaintiff filled out and submitted a Federal Trade Commission ID Theft Report.

25.     On or about November 21, 2022, Defendants sent Plaintiff a letter stating they rejected her claim of fraud as they were unable to complete their investigation because they

did not receive the completed fraud packet from Plaintiff, nor did Plaintiff provide a notarized affidavit to Defendant. Defendants also stated they would remove the Administrative Forbearance that was placed on the Loan and would report the Loan in her name to the credit reporting agencies.

26.    On or about November 23, 2023, Defendants sent Plaintiff a letter stating they had conducted an investigation with respect to the disputed Loan and found that fraud had been committed on the account. Defendants also confirmed the information they had reported to the credit reporting agencies was inaccurate. Finally, Defendants stated they had corrected their records, contacted the credit reporting agencies, and furnished the corrected information to them.

27.    On December 1, 2022, Defendants again did an unauthorized "account review" of Plaintiff's Experian credit report.

28.    On or about December 2, 2022, Plaintiff sent a dispute letter to TransUnion stating the Loan had been fraudulently opened in Plaintiff's name without her authorization ("First TransUnion Dispute"). Plaintiff stated that her husband had opened numerous accounts, including the Loan, in her name, without her knowledge or permission, to feed his gambling addiction. With her dispute, Plaintiff included her name, address, date of birth, and Social Security number. TransUnion received this dispute on December 19, 2022, and forwarded same to Defendant.

29.    On or about December 2, 2022, Plaintiff sent a dispute letter to Experian stating the Loan had been fraudulently opened in Plaintiff's name without her authorization ("First Experian Dispute"). Plaintiff stated that her husband had opened numerous accounts,

including the Loan, in her name, without her knowledge or permission, to feed his gambling addiction. With her dispute, Plaintiff included her name, address, date of birth, and Social Security number. Experian received this dispute on December 19, 2022, and, upon information and belief, forwarded same to Defendant.

30.     On or about December 12, 2022, Plaintiff sent a dispute letter to Equifax stating the Loan had been fraudulently opened in Plaintiff's name without her authorization ("First Equifax Dispute"). Plaintiff stated that her husband had opened numerous accounts, including the Loan, in her name, without her knowledge or permission, to feed his gambling addiction. With her dispute, Plaintiff included her name, address, date of birth, and Social Security number.

31.     On or about December 24, 2022, Defendants responded to Experian's ACDV instructing Experian to delete the Loan due to fraud.

32.     From July 2022 through December 2022, Defendants reported false, libelous, and defamatory information regarding the Plaintiff to the national credit bureaus and to numerous third parties.  While Defendants were reporting the fraudulent Loan as belonging to Plaintiff on all of her credit reports, said information was provided to and/or viewed by Boykin Home Mortgage LLC, Finance MA, Equifax, Credit Central, Polaris Home Funding Corp., Admiral Home Mortgage LLC, First Heritage Credit, ADR/EMM Loans, Clarity Services, Inc., Happy Money, Inc., Prosper Marketplace, One Main Financial, Lending Point LLC, Net Credit FS, Upstart Network Inc., IR/Simple Path Financial, Credit One Bank, and Bank of America.

33.     On or about January 7, 2023, Plaintiff received the results of Equifax's investigation

showing that the SoFi Loan had been deleted from Plaintiff's Equifax credit report.

34.    On or about January 11, 2023, Plaintiff received the results of TransUnion's investigation showing Defendants instructed TransUnion to delete the Loan from Plaintiff's TransUnion credit report due to fraud.

35.    On August 3, 2023, Defendants again accessed the Plaintiff's Experian credit report for an alleged "account review".  At the time Defendants wrongfully viewed Plaintiff's Experian credit file, Defendants had already acknowledged that the Loan was fraudulently opened in Plaintiff's name.

## COUNT ONE
### (Fair Credit Reporting Act)

36.    Plaintiff hereby adopts all of the allegations set forth in paragraphs 15 through 35 as if set forth fully herein.

37.    TransUnion, LLC ("TransUnion"), and Experian Information Solutions, Inc. ("Experian"), the entities from which Defendants obtained Plaintiff's credit reports, are consumer reporting agencies within the meaning of the Fair Credit Reporting Act.

38.    The credit reports Defendants obtained from TransUnion and Experian relating to Plaintiff were "consumer reports" within the meaning of the Fair Credit Reporting Act.

39.    Under 15 U.S.C. §1681b(f), Defendants are prohibited from obtaining Plaintiff's credit reports unless Defendants have a permissible purpose for obtaining said reports.

40.    Defendants' obtainment of Plaintiff's credit reports when Plaintiff did not initiate same by way of applying for credit was a violation of 15 U.S.C. §1681b(f) as Plaintiff did not authorize Defendants to retrieve or view her credit reports nor was a firm offer of credit

made to Plaintiff.

41.    Defendants had no permissible purpose in obtaining Plaintiff's credit reports.

42.    In connection with Defendants' practices of obtaining credit reports without a permissible purpose, and specific to Defendants having obtained Plaintiff's credit reports without a permissible purpose, Defendants acted negligently.

43.    In connection with Defendants' practices, Defendants certified to TransUnion and Experian that they were requesting Plaintiff's credit reports in response to a request by Plaintiff when, in actuality, said request was made without Plaintiff's permission or knowledge.  Accordingly, Defendants obtained the credit reports through false pretenses within the meaning of 15 U.S.C. §1681n(b).

44.    As a result of Defendants' negligent practice of violating the Fair Credit Reporting Act, Plaintiff has been caused to suffer damage to her credit reputation and credit score, worry, humiliation, fear, loss of sleep, anxiety, nervousness, loss of enjoyment of life, physical sickness including a dramatic rise in blood pressure, physical pain and mental anguish for which Plaintiff seeks actual damages.

45.    As a result of Defendants' negligent practice of violating the Fair Credit Reporting Act, Defendants are liable under 15 U.S.C. §1681o for the costs of bringing this action as well as reasonable attorneys' fees.

## COUNT TWO
### (Violation of the Fair Credit Reporting Act)

46.    Plaintiff hereby adopts all of the allegations set forth in paragraphs 15 through 45 as if set forth fully herein.

47.    TransUnion and Experian, the entities from which Defendants obtained Plaintiff's credit reports, are consumer reporting agencies within the meaning of the Fair Credit Reporting Act.

48.    The credit reports Defendants obtained from TransUnion and Experian relating to Plaintiff were "consumer reports" within the meaning of the Fair Credit Reporting Act.

49.    Under 15 U.S.C. §1681b(f), Defendants are prohibited from obtaining Plaintiff's credit reports unless Defendants have a permissible purpose for obtaining said reports.

50.    Defendants' obtainment of Plaintiff's credit reports when Plaintiff did not initiate same by way of applying for credit was a violation of 15 U.S.C. §1681b(f) as Plaintiff did not authorize Defendants to retrieve or view her credit report nor was a firm offer of credit made to Plaintiff.

51.    Defendants had no permissible purpose in obtaining Plaintiff's credit reports.

52.    In connection with Defendants' practices of obtaining credit reports without a permissible purpose, and specific to Defendants having obtained Plaintiff's credit reports without a permissible purpose, Defendants acted willfully, knowingly, and in conscious disregard for the rights of Plaintiff under the Fair Credit Reporting Act.

53.    In connection with Defendants' practices, Defendants certified to TransUnion and Experian that they were requesting Plaintiff's credit reports in response to a request by Plaintiff when, in actuality, said request was made without Plaintiff's permission or knowledge.  Accordingly, Defendants obtained the credit reports through false pretenses within the meaning of 15 U.S.C. §1681n(b).

54.    As a result of Defendants' willful practice of violating the Fair Credit Reporting Act,

Plaintiff has been caused to suffer damage to her credit reputation and credit score, worry, humiliation, fear, loss of sleep, anxiety, nervousness, loss of enjoyment of life, physical sickness including a dramatic rise in blood pressure, physical pain and mental anguish for which Plaintiff seeks actual damages. Furthermore, Defendants are liable under 15 U.S.C. §1681n for punitive damages in an amount sufficient to deter Defendants from engaging in this kind of illegal practice in the future.

55.     As a result of Defendants' willful practice of violating the Fair Credit Reporting Act, Defendants are liable under 15 U.S.C. §1681o for the costs of bringing this action as well as reasonable attorneys' fees.

## COUNT THREE
### (Defamation, Libel and Slander)

56.     The Plaintiff adopts the averments and allegations of paragraphs 15 through 55 hereinbefore as if fully set forth herein.

57.     Defendants willfully, wantonly, recklessly and/or maliciously published and communicated false and defamatory statements regarding Plaintiff to third parties and the public at large. Said statements harmed Plaintiff's reputation and caused Plaintiff physical sickness, mental anguish and emotional distress.

58.     Said communications were false in that Plaintiff was not indebted to Defendants. Plaintiff did not owe any balance on the Loan the subject of this action as said Loan was clearly fraudulent.

59.     Said false and defamatory statements have harmed the reputation of Plaintiff and/or deterred third persons from associating with Plaintiff. Specifically, Defendants reported

the Loan to the national credit reporting agencies as belonging to Plaintiff so the Loan would appear on Plaintiff's credit reports. Plaintiff's credit reports were viewed by numerous third parties as set out above and Plaintiff's cost of insurance increased.

60.    Defendants communicated to third parties and the public at large false information concerning Plaintiff, disseminating and imputing false and misleading credit worthiness information concerning Plaintiff, including, but not limited to, reporting that Plaintiff owed the Loan the subject of this action.

61.    At the time said communications were made, Defendants knew or should have known the falsity of the communications or recklessly disregarded the potential inaccuracy of the information, yet knowingly, willfully and maliciously communicated the falsity.

62.    As a result of Defendants' intentional communications to third parties of the false information, Plaintiff was caused to suffer injury to her reputation in the eyes of her community and the public at large, and was forced to endure credit reporting of the Loan in spite of the fact that Plaintiff did not owe the Loan as it fraudulently opened in her name without her knowledge or permission.

63.    As a proximate consequence of said defamation, libel and slander, Plaintiff was caused to have negative credit reports, to be held up to public ridicule or shame, to have her insurance costs increased, and made to suffer humiliation, anxiety, loss of sleep, anger, worry, physical sickness, loss of enjoyment of life, and mental anguish for which she claims compensatory and punitive damages.

**COUNT FOUR**

**(Invasion of Privacy)**

64.    The Plaintiff adopts the averments and allegations of paragraphs 15 through 63 hereinbefore as if fully set forth herein.

65.    South Carolina state law recognizes the Plaintiff's right to be left alone and to be free from invasions of privacy in such a manner as to outage or cause serious mental suffering, shame, and humiliation to Plaintiff.  *See Swinton Creek Nursery v. Edisto farm Credit*, 334 S.C. 469, 477 (S.C. 1999).

66.    Defendants intentionally intruded upon the Plaintiff's right to privacy by repeatedly viewing Plaintiff's credit files, or parts thereof, without Plaintiff's authorization or permission, and by refusing to delete/remove the impermissible pulls of her credit reports from her credit reports.

67.    In addition to the hard inquiries above, Defendants viewed Plaintiff's TransUnion credit report on June 28, 2022, July 22, 2022, and August 24, 2022.  Defendants viewed Plaintiff's Experian credit report on June 10, 2022, June 22, 2022, June 28, 2022, July 22, 2022, August 24, 2022, October 6, 2022, and August 3, 2023.

68.    The actions of Defendants were malicious, intentional, and repeated with such frequency that they were outrageous, caused Plaintiff serious mental suffering and invaded the Plaintiff's privacy by wrongfully intruding into Plaintiff's private activities.

69.    The conduct of Defendants in repeatedly viewing Plaintiff's credit reports and continuing to report the hard inquiries even after Defendants admitted the Loan was fraudulent demonstrates the Defendants' blatant and shocking disregard for Plaintiff's rights, and resulted in multiple invasions of privacy in such a way as would be considered

13

highly offensive to a reasonable person.

70.    As a result of the intrusions and invasions into Plaintiff's privacy and placing Plaintiff in a false light, the Plaintiff is entitled to compensatory damages in an amount to be determined by a struck jury.

71.    Additionally, as all of the acts undertaken and performed by Defendants and their employees and/or agents were committed with malice, intent, wantonness, and recklessness, the Plaintiff is also entitled to punitive damages from Defendants in an amount to be determined by a struck jury.

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendants for the following:

A.    Actual and statutory damages from Defendants pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.    Punitive damages from Defendants pursuant to 15 U.S.C. §1681n(a)(2);

C.    Costs and reasonable attorneys' fees from Defendants pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2);

D.    For compensatory and punitive damages in an amount to be determined by a struck jury for Defendants' defamation of Plaintiff and for Defendants' repeated invasions of Plaintiff's privacy.

E.    For this trial to be heard by a jury; and

F.    For all such other and further relief as the Court may deem just and proper.

/s/ Penny Hays Cauley
Penny Hays Cauley, Fed. ID No. 10323
Attorneys for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

/s/ Penny Hays Cauley
Of Counsel

**DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL:**

Social Finance, Inc., d/b/a Sofi
c/o CSC – Lawyers Incorporating Service – Registered Agent
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833-3505


SoFi Lending Corp., d/b/a SoFi
c/o Corporation Service Company – Registered Agent
508 Meeting Street
West Columbia, South Carolina 29169


SoFi Bank N.A., Corp
c/o Anthony Gallo – Registered Agent
2750 E. Cottonwood Pkwy, Suite 300
Salt Lake City, Utah 84121